UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE THOMAS.<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner,<br>Social Security Administration,<br><br>    Defendant.<br>_____/ | No. C-07-4186 EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 9-10)** |

In February 2003, Denise R. Thomas filed an application for a period of disability and disability insurance benefits, alleging disability as of August 2001. Ms. Thomas has exhausted her administrative remedies with respect to her claim of disability. This Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g). Both Ms. Thomas and the Commissioner have moved for summary judgment. Having considered the parties' briefs and accompanying submissions, the Court hereby **DENIES** Ms. Thomas's motion for summary judgment and **GRANTS** the Commissioner's motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

In February 2003, Ms. Thomas filed an application for disability insurance benefits, alleging disability as of August 2001. *See* AR 83-85 (application for disability insurance benefits). The applications were initially denied on November 13, 2003, *see* AR 44-47 (notice of disapproved claims), and again on reconsideration on June 8, 2004. *See* AR 52-56 (notice of reconsideration). Ms. Thomas then sought an administrative hearing before an administrative law judge ("ALJ"). *See*

AR 57 (request for hearing by ALJ). Two hearings were held before ALJ Fenton Hughes on April 27, 2006, and July 26, 2006. *See* AR 543-74 (ALJ hearing transcripts).

On October 27, 2006, ALJ Hughes held that Ms. Thomas was not disabled under the Social Security Act. *See* AR 14-19 (ALJ decision). The ALJ evaluated Mr. Shaw's claim of disability using the five-step sequential evaluation process for disability required under federal regulations. *See* 20 C.F.R. § 404.1520.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work considering the claimant's age, education, and work experience together with the claimant's residual functional capacity ("RFC"), or what the claimant can do despite impairments. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

At step one, ALJ Hughes concluded that Ms. Thomas had engaged in substantial gainful activity since August 2001 (the alleged onset date of disability) and therefore denied her claim for disability. The ALJ stated in relevant part as follows:

> The evidence of record showed that the claimant's earnings record indicates that she earned $13,940 in 2002, $14,078.00 in 2003, and $10,637 in 2004. At the hearing, the claimant testified that she works for Children's Council of San Francisco, a public agency, where she is employed to take care of her 3 granddaughters while their mother works a night shift from 10 p.m. to 7:30 a.m. She further testified that she works 40 hours per week, covering her daughter's absence at work. Claimant stated that she sleeps during most of her shift and is paid to handle any problem which arises, whether it is a child waking up at night, or a more serious event such as illness, fire, etc.
>
> The vocational expert testified that the claimant's work was characterized as Child Monitor D.O.T. 301.677-011 and stated that the person performing this job was employed primarily to be responsible for their charges, whether they were required to be awake, or were allowed to sleep.

> 20 C.F.R. [§] 404.1572 defines substantial work activity as work that involves doing significant physical or mental activities. Gainful work activity is defined as work activity that is done for pay or profit.
>
> The undersigned finds that claimant's salary is above the SGA level and she is working at the SGA level whether she is asleep or awake. The undersigned notes that at any time and without warning, the claimant must be capable of performing the required significant physical or mental activities. Thus, the claimant's job is SGA because of the responsibility it entails.

AR 18-19 (ALJ decision).

On June 15, 2007, Ms. Thomas's request for review of ALJ Hughes's decision was summarily denied by the Appeals Council. *See* AR 6-8 (notice of Appeals Council decision). This petition ensued.

## II.   DISCUSSION

A court may disturb the final decision of the Social Security Administration "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir. 1993). Substantial evidence means "more than a mere scintilla, but less than a preponderance." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) (internal quotation marks omitted). The court's review "must consider the record as a whole," both that which supports as well as that which detracts from the Secretary's decision. *Desrosiers v. Secretary of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "If the evidence admits of more than one rational interpretation, [the court] must uphold the decision of the ALJ." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

In the instant case, Ms. Thomas challenges the ALJ's step one finding. As noted above, at step one, an ALJ must consider whether the claimant is doing substantial gainful activity; if so, then the claimant is deemed not disabled, regardless of the claimant's medical condition or age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)(4)(i), (b). Under the regulations, substantial gainful activity is defined as work activity that is both substantial (*i.e.*, "work activity that involves doing significant physical or mental activities") and gainful (*i.e.*, "work activity that

1  you do for pay or profit"). 20 C.F.R. § 404.1572. "[T]here is a presumption of substantial gainful
2  employment if the applicant earns over the [particular] amount specified in the [Social Security]
3  guidelines." *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990); *see also* 20 C.F.R. §
4  404.1574(a)(1) ("Your earnings may show you have done substantial gainful activity. Generally, in
5  evaluating your work activity for substantial gainful activity purposes, our primary consideration
6  will be the earnings you derive from the work activity."). "The presumption is rebuttable by the
7  claimant."[1] *Corrao v. Shalala*, 20 F.3d 943, 948 (9th Cir. 1994). The presumptive level for
8  substantial gainful activity was $800 in 2003; $810 in 2004; $830 in 2005; and $860 in 2006. *See*
9  http://www.socialsecurity.gov/OACT/COLA/sga.html (last visited on April 2, 2008); *see also* Mot.
10 at 10 n.71; Opp'n at 3.

11     There is substantial evidence to support the ALJ's finding that, since the alleged onset date
12 of August 2001, Ms. Thomas has earned more than the presumptive level. At the hearing, Ms.
13 Thomas testified that she had been providing babysitting services to her daughter, for which she was
14 paid by the Children's Council of San Francisco, "for approximately three years," *i.e.*, from 2003 to
15 2006. AR 562 (ALJ hearing transcript). A time sheet that was provided to the ALJ indicated that
16 she was being paid for working five days a week (Monday through Friday) and ten hours a day
17 (from approximately 9:15 p.m. to 7:15 a.m.). *See* AR 563 (ALJ hearing transcript); Pl.'s Ex. B
18 (April 2006 time sheet). For the year 2003, Ms. Thomas earned $14,078 and, for the year 2004,
19 $10,637. *See* AR 89 (computational yearly earnings). Ms. Thomas therefore earned approximately
20 $1,218 per month in 2003[2] and $921[3] in 2004 -- both above the presumptive level for substantial
21 gainful activity ($800 and $810 respectively).

---

[1] *Corrao*, 20 F.3d at 948 ("In considering whether the presumption is rebutted, the factors to be considered include the responsibilities and skills required to perform the work, the amount of time the individual spends working, the quality of the individual's work, [and] special working conditions . . . .."); *Keyes*, 894 F.2d at 1056 ("[A] claimant may rebut a presumption based on earnings with evidence of his inability . . . to perform the job well, without special assistance, or for only brief periods of time.").

[2] ($14,078 ÷ 52 weeks) x 4.5 weeks ≈ $1,218.

[3] ($10,637 ÷ 52 weeks) x 4.5 week ≈ $921.

1    Ms. Thomas contends, however, that these calculations are not correct because they do not
2 take into account the testimony of the vocational expert. The Court does not agree. First, there is
3 nothing to support Ms. Thomas's implicit assertion that the ALJ was required to give any deference
4 to the expert or even consider his opinion at step one. *Cf. McNeal v. Callahan*, No. 97 C 1248, 1998
5 U.S. Dist. LEXIS 9958, at *11-12 (N.D. Ill. June 30, 1998) (noting that ALJ terminated analysis at
6 step one and therefore did not rely on vocational expert testimony in finding that plaintiff was not
7 disabled). Indeed, the regulations only discuss vocational expert testimony with respect to step five.
8 *See* 20 C.F.R. § 404.1566(e) ("If the issue in determining whether you are disabled is whether your
9 work skills can be used in other work and the specific occupations in which they can be used, or
10 there is a similarly complex issue, we may use the services of a vocational expert or other
11 specialist."); *see also Fluker v. Sullivan*, No. 92 C 0874, 1993 U.S. Dist. LEXIS 4016, at *13, 15
12 (N.D. Ill. Mar. 31, 1993) (noting that 20 C.F.R. § 416.966, the comparable Title XVI regulation,
13 pertains to step five and not step one; adding that, "[f]or the same reason, [claimant's] reliance on §
14 416.966 for his argument that the ALJ was 'required' to obtain a vocational expert testimony to
15 determine whether he engaged in substantial gainful activity is mistaken").

16    Second, to the extent that the ALJ did consider the vocational expert's testimony at step one
17 (his decision reflects that he did, at least somewhat), Ms. Thomas's characterization of that
18 testimony is not entirely accurate. At the hearing, the vocational expert did not testify, as Ms.
19 Thomas claims that, if she "had been performing the bona fide work of a babysitter, she only did so
20 during those hours when she was awake, as opposed to when she slept." Reply at 2. Rather, the
21 vocational expert simply indicated that it would not be *typical* for a chid monitor (or babysitter) to
22 be paid for hours during which he or she slept. *See* AR 568 (ALJ hearing transcript) (vocational
23 expert stating that, for plaintiff to be responsible for responding to an emergency or problem which
24 might arise, would constitute significant physical or mental activity for "[t]he time she is awake";
25 adding that "[f]rom the time that she's sleeping that's not typical [--] it wouldn't be paid"). The
26 expert also testified that a child monitor working a graveyard shift would *typically* need to be awake
27 and not asleep. *See* AR 569 (vocational expert testifying that, "for somebody sleeping, that, that
28 would typically not be -- that, that my experience would be that, that would be a graveyard shift and

1 she would need to be awake and not asleep"); *see also* AR 566 (vocational expert testifying that a
2 child monitor "would *usually* not sleep" but rather "would be awake for the whole time") (emphasis
3 added). This testimony does not mean that a child monitor could not be compensated for his or her
4 time while sleeping or would always be required to be awake. In fact, the vocational expert
5 admitted as much upon questioning by the ALJ:

> Q: Now, . . . suppose I'm on a vacation . . . let's say actually I have [] babysitters on three shifts. I have somebody on the night shift, who comes in and she sleeps and she watches over my kids and my house, takes care of any problems that arise. She would sleep until something happened. Would that be a babysitter's job?
>
> A: Yes.

AR 569 (ALJ hearing transcript).

Ms. Thomas claims that time spent sleeping is not productive work and therefore should not be counted. *See* 20 C.F.R. § 404.1574(a)(2) ("When we decide whether your earnings show that you have done substantial gainful activity, we do not consider any income that is not directly related to your productivity. When your earnings exceed the reasonable value of the work you perform, we consider only that part of your pay which you actually earn."). However, as the ALJ indicated, the work was productive since she was there to handle any problem that should arise while her daughter was absent from the house. *See* AR 18-19 (ALJ decision); AR 563 (ALJ hearing transcript). As Plaintiff's opening brief acknowledges, "Thomas agreed that if there were some emergency during the time her daughter is away, she could tend to the matter or contract her daughter." Mot. at 4. Ms. Thomas's daughter would have had to hire someone to watch the children while she worked if Ms. Thomas were not available. Moreover, regardless of what one may think the true value of her services were, the fact remains that Ms. Thomas was paid amounts in excess of the presumptive limits for her work.

The real thrust of Ms. Thomas's argument seems to be either that (1) there is no job like hers in the national economy (*i.e.*, where she can babysit only overnight when the children are already asleep and where she too can sleep), *see* AR 572-73 (ALJ hearing transcript), or that (2) her job had special conditions and therefore should not be considered substantial gainful activity. *Cf.* Mot. at 9

1  (arguing that, "[i]f Thomas were employed as a child monitor outside of her daughter's home, she
2  could not sleep on the job"); Reply at 2 (noting that, if an individual receives support performing the
3  job, this can rebut the presumption of substantial gainful activity based on earnings).  Neither
4  contention, however, is availing.

5        First, whether there is a job like Ms. Thomas's in the national economy is a step five issue,
6  not a step one issue.  *See* 20 C.F.R. § 404.1520(a)(4)(v) (stating that, "[a]t the fifth and last step, we
7  consider our assessment of your residual functional capacity and your age, education, and work
8  experience to see if you can make an adjustment to other work"); *Hoopai v. Astrue*, 499 F.3d 1071,
9  1074 (9th Cir. 2007) (noting that, at step five, the agency has the burden of proving that "'the
10 claimant can perform a significant number of other jobs in the national economy'").  The ALJ never
11 reached step five.

12       Second, while work done under special conditions may preclude a finding of substantial
13 gainful activity at step one, *see* 20 C.F.R. § 404.1573(c) ("If your work is done under special
14 conditions, we may find that it does not show that you have the ability to do substantial gainful
15 activity."), that is only so when the special conditions were made because of the claimant's
16 impairment.  The relevant regulation specifically states as follows: "The work you are doing may be
17 done under special conditions *that take into account your impairment . . . .*"  *Id.* (emphasis added).
18 *See also McCormick v. Barnhart*, No. C 01-4489 MMC, 2004 U.S. Dist. LEXIS 6038, at *37 (N.D.
19 Cal. Apr. 6, 2004) ("Although the record indicates that McCormick's mother gave him more leeway
20 in his employment as a fast food manager than she would have given a non-family member in the
21 same position, nothing in the record suggests that those 'special conditions' of his employment were
22 because of his severe impairments.").  In the instant case, there is no indication that Ms. Thomas's
23 special conditions of employment -- whether the night-time hours or her sleeping -- were because of
24 any impairment.  The record simply reflects that Ms. Thomas began babysitting for her
25 grandchildren at night because there was a change in her daughter's work schedule.  *See* AR 566.

26       Finally, the Court notes that there is no evidence in the record that suggests that Ms. Thomas
27 could rebut the presumption of substantial gainful activity based on another ground such as the
28 quality of her babysitting work or how well she performed the job.  *See, e.g.*, *Corrao*, 20 F.3d at 948

(indicating that the presumption may be rebutted based on, *e.g.*, the quality of the individual's work or how well he performs the job); *Keyes*, 894 F.2d at 1056 (same). The relevant regulation provides:

> If you are unable, because of your impairments, to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work, this may show that you are not working at the substantial gainful activity level. If you are doing work that involves minimal duties that make little or no demands on you and that are of little or no use to your employer, . . . this does not show that you are working at the substantial gainful activity level.

20 C.F.R. § 404.1573(b). In the instant case, there is no evidence that Ms. Thomas could not carry out the duties for which she was hired -- *e.g.*, cope with a problem or emergency that arose with her grandchildren during the night. Nor is there evidence to show that her work was of no use to her employer. Rather, as indicated above, the record suggests that Ms. Thomas's daughter would have had to hire someone to watch the children while she worked if Ms. Thomas was not available.

In short, Ms. Thomas, though perhaps asleep during the greater part of her working hours, performed the important function of being "on-call" to respond to the children's needs if necessary. It was a job that had substantial use and value. Nothing indicates her performance or duties were compromised because of an impairment. The ALJ's decision was therefore supported by substantial evidence.

### III.   CONCLUSION

Accordingly, the Court grants the Commissioner's motion for summary judgment and denies Ms. Thomas's motion for summary judgment.

This order disposes of Docket Nos. 9 and 10.

IT IS SO ORDERED

Dated: May 13, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge